1  Mark A. Ozzello (SBN 116595)
   Mark.Ozzello@capstonelawyers.com
2  Tarek H. Zohdy (SBN 247775)
   Tarek.Zohdy@capstonelawyers.com
3  Cody R. Padgett (SBN 275553)
   Cody.Padgett@capstonelawyers.com
4  Trisha K. Monesi (SBN 303512)
   Trisha.Monesi@capstonelawyers.com
5  Capstone Law APC
   1875 Century Park East, Suite 1000
6  Los Angeles, California 90067
   Telephone:    (310) 556-4811
7  Facsimile:    (310) 943-0396

8  Attorneys for Plaintiff Kimberly Vaughn-Love

9

10                UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

13  KIMBERLY VAUGHN-LOVE,                 Case No.:   '19CV519  DMS BLM
    individually, and on behalf of other
14  members of the general public similarly  **CLASS ACTION COMPLAINT**
    situated,
15                                           (1)  Violation of 15 U.S.C. § 1681b(b)(2)(A)
              Plaintiff,                           (Fair Credit Reporting Act);
16                                           (2)  Violation of 15 U.S.C. §§ 1681b(b)(3)(A)
         vs.                                      and 1681m(a) (Fair Credit Reporting Act);
17                                           (3)  Violation of California Civil Code § 1786
    TEG STAFFING, INC., a California              *et seq.* (Investigative Consumer Reporting
18  corporation; and EASTRIDGE                    Agencies Act);
    WORKFORCE TECHNOLOGY, INC., a         (4)  Violation of California Civil Code § 1785
19  California corporation.                       *et seq.* (Consumer Credit Reporting
                                                  Agencies Act); and
20            Defendants.                     (5)  Violation of California Business &
                                                  Professions Code § 17200 *et seq.* (Unfair
21                                                Competition Law).

22                                           **Jury Trial Demanded As To Claims That Are
23                                           So Triable**

24

25

26

27

28

Plaintiff Kimberly Vaughn-Love (herein "Plaintiff"), individually and on behalf of all other members of the public similarly situated, based upon facts which either have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, alleges as follows:

**NATURE OF THE ACTION**

1.    This class action arises from the acquisition and use of consumer and/or investigative consumer reports (referred to collectively as "background reports") by TEG STAFFING, INC., a California corporation; and/or EASTRIDGE WORKFORCE TECHNOLOGY, INC., a California corporation (herein referred to as "Defendants" or "Eastridge") to conduct background checks on Plaintiff and other prospective, current, and former employees.

2.    Defendants routinely obtain and use information from background reports in connection with their hiring processes without complying with state and federal mandates for doing so.  As part of this practice, Defendants provide a requisite disclosure form to applicants. However, the disclosure form that Defendants provided to Plaintiff and each Class Member as part of its hiring process is noncompliant with state and federal statutes.

3.    Plaintiff, individually and on behalf of all other members of the public similarly situated, seeks compensatory and punitive damages due to Defendants' willful or grossly negligent conduct and its systematic and willful violation of, *inter alia*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*., Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code §§ 1786 *et seq*., Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785 *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*.

4.    Defendants have violated the requirements under these statutes by failing to provide proper "pre-authorization" disclosures.  The procurement of background reports for employment purposes is subject to strict disclosure requirements under federal law pursuant to the FCRA and under California law pursuant to the ICRAA and CCRAA.  Among other things, an employer may not procure a background report concerning a job applicant unless a "clear and

conspicuous" disclosure is made in a stand-alone document that "consists solely of the disclosure" informing the applicant that a report may be obtained for employment purposes. This required disclosure document is sometimes referred to as a "pre-authorization" form.

5.     The reason for requiring that the disclosure be in a stand-alone document, according to the Federal Trade Commission ("FTC"), is to prevent consumers from being distracted by other information that is side-by-side within the disclosure.[1]  The FCRA seeks to protect important privacy rights and to ensure that consumers receive adequate disclosure and provide adequate authorization for background checks.  A stand-alone disclosure form is critical to achieving that goal.

6.     Defendants' pre-authorization form contains extraneous and irrelevant information, such as the inclusion of the laws of multiple states other than California, which violates the requirement that the disclosure be made in a document that consists *solely* of the disclosure.  Additionally, Defendants' pre-authorization form fails to be clear and conspicuous because it contains language that would confuse a reasonable reader.  For these reasons, among others, Defendants' pre-authorization form violates the law.

7.     As further alleged herein, Defendants' violations occurred because Defendants wilfully have failed to properly apprise themselves of the statutory mandates before seeking, acquiring, and utilizing background reports to make employment decisions; violated the express and unambiguous provisions of the relevant statutes; and/or failed to implement reasonable procedures to assure compliance with statutory mandates.

8.     As a result of Defendants' wrongful acts and omissions, Plaintiff and other putative class members have been injured, including, without limitation, having their privacy and statutory rights invaded in violation of the FCRA, ICRAA, and CCRAA.

9.     Plaintiff seeks on behalf of herself and putative class members, statutory, actual and/or compensatory damages, punitive damages, and equitable relief, including costs and

---

[1] Leathers, FTC Informal Staff Opinion Letter, Sept. 9, 1998, available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98 (last accessed March 13, 2019).

CLASS ACTION COMPLAINT

1    expenses of litigation including attorney's fees, and appropriate injunctive relief requiring

2    Defendants to comply with their legal obligations, as well as additional and further relief that

3    may be appropriate.  Plaintiff reserves the right to amend this Complaint to add additional relief

4    as permitted under applicable law.

5                              **JURISDICTION AND VENUE**

6         10.    The FCRA, codified as 15 U.S.C. § 1681 *et seq*., authorizes Court actions by

7    private parties to recover damages for failure to comply with its provisions.  Jurisdiction over

8    Plaintiff's FCRA claims is based upon 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

9         11.    Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's

10   state law claims because the state claims are so related to the FCRA claims that they form part

11   of the same case or controversy.  Additionally, jurisdiction over Plaintiff's state law claims is

12   based upon the Class Action Fairness Act of 2005, codified as 28 U.S.C. § 1332(d)(2)(A),

13   because the amount in controversy exceeds five million dollars ($5,000,000), exclusive of

14   interest and costs, and because at least one member of the proposed class is a citizen of a

15   different state than Defendant, and the number of proposed class members exceeds 100.

16        12.    Venue lies within this judicial district pursuant to 28 U.S.C. § 1391(b)-(c)

17   because Defendants transacts business in this judicial district and certain acts giving rise to the

18   claims asserted in this Complaint occurred within the District.  Venue is proper in the Southern

19   District of California pursuant to 28 U.S.C. § 1391 because this District is a District in which a

20   substantial part of the events or omissions giving rise to the claim occurred.  Specifically,

21   Plaintiff completed Defendants' employment application process in the County of San Diego.

22   Venue is proper in the Southern District of California.

23                                  **THE PARTIES**

24        13.    Plaintiff KIMBERLY VAUGHN-LOVE is a resident of San Diego, California in

25   San Diego County.

26        14.    Defendant TEG STAFFING, INC. was and is, upon information and belief, a

27   California corporation with its principal place of business in San Diego, California, and was, at

28   all times relevant to this complaint, engaged in commercial transactions throughout this county,

1  the State of California and the various states of the United States of America.

2    15. Defendant EASTRIDGE WORKFORCE TECHNOLOGY, INC. was and is,

3  upon information and belief, a California corporation with its principal place of business in San

4  Diego, California, and was, at all times relevant to this complaint, engaged in commercial

5  transactions throughout this county, the State of California and the various states of the United

6  States of America.

7  **PLAINTIFF'S FACTS**

8    16. Plaintiff applied for a job with Defendants by completing an Employment

9  Application on or about July 31, 2018, in San Diego County, California.

10    17. Plaintiff alleges that in evaluating her for employment, Defendants procured or

11  caused to be prepared a background report (i.e., a consumer report and/or investigative

12  consumer report, as defined by 15 U.S.C. § 1681a(d)(1)(B) and 15 U.S.C. § 1681a(e), a

13  consumer credit report, as defined by Cal. Civ. Code Section 1785.3(c), and an investigative

14  consumer report, as defined by Cal. Civ. Code Section 1786.2(c)).

15    18. In connection with her employment application, Plaintiff completed Defendants'

16  standard application materials, which, on information and belief, were used regularly by

17  Defendants for all job applicants during the relevant time period in the connection with their

18  employment policies, procedures, and/or practices.  Among other things, Defendants'

19  employment application process included a document titled, "Profile Advantage Consent"

20  ("Authorization").

21    19. A reproduction of the Authorization form is attached herein as "Exhibit 1."

22    20. Plaintiff filled out the Authorization form on or about August 1, 2018.

23    21. As shown in Exhibit 1, Defendants' Authorization form provides that:

24     (a) Eastridge Workforce Solutions ("the Company"), on its own behalf and

25      on behalf of the Company's customers and clients, may obtain

26      information about you from a third party consumer reporting agency in

27      connection with your employment application and for employment

28      purposes with the Company, or in connection with employment purposes

CLASS ACTION COMPLAINT

1   with the Company's customers and clients on a direct hire basis.

2   (b)   Thus, you may be the subject of a "consumer report" and/or an

3   "investigative consumer report" which may include information about

4   your character, general reputation, personal characteristics, and/or mode

5   of living, and which can involve personal interviews with sources such as

6   your neighbors, friends, or associates.

7   (c)   These reports may contain information regarding your credit history,

8   criminal history, social security verification, motor vehicle records

9   ("driving records"), and verification of your education or employment

10  history, employment references or other background checks.

11  22.   In addition, the Authorization form contains the following provision within its

12  four corners, which is extraneous to Defendants' disclosure of its intent to perform a

13  background check:

14  The scope of this notice and authorization is all-encompassing,
    however, allowing the Company, on its own behalf and on behalf
15  of the Company's customers and clients, to obtain from any
    outside organization all manner of consumer reports and
16  investigative consumer reports now and throughout the course of
    your employment or with the Company or with the Company's
17  customers and clients, as applicable, to the extent permitted by
    law. As a result, you should carefully consider whether to
18  exercise your right to request disclosure of the nature and scope of
    any investigative consumer report.
19

20  23.   Furthermore, to the extent that the Authorization form was presented to Plaintiff

21  as one document as shown in Exhibit 1, it was comprised of "(a) the DISCLOSURE

22  REGARDING BACKGROUND INVESTIGATION; (b) A SUMMARY OF YOUR RIGHTS

23  UNDER THE FAIR CREDIT REPORTING ACT; (c) A Summary of Your Rights Under the

24  California Civil Code Section 1786.22 (if applicable); (d) A SUMMARY OF YOUR RIGHTS

25  UNDER WASHINGTON STATE LAW (if applicable), and (e) Article 23-A of the New York

26  Correction Law (if applicable)," as well as a provision named "VOLUNTARY CONSENT FOR

27  DISCLOSURE OF BACKGROUND CHECK REPORTS TO THIRD PARTIES FOR

28  BUSINESS PURPOSES," spanning 11 printed pages, all of which are extraneous to

Defendants' disclosure of its intent to perform a background check.

24.     The inclusion of these provisions in the Authorization form, which functioned as a combined disclosure and authorization document, violates § 1681b(b)(2)(A) of the FCRA.

25.     Under the FCRA, it is unlawful to procure or cause to be procured, a consumer report[2] or investigative consumer report[3] for employment purposes, unless a "clear and conspicuous" disclosure is made in a document that consists "solely of the disclosure" and the consumer has authorized in writing the procurement of the report.  15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

26.     Although the disclosure and the authorization may be combined in a single document, the FTC has warned that the form should not include any extraneous information. For example, a 1998 opinion letter from the FTC states: "Section 604(b)(2)(A) of the FCRA [15 U.S.C. § 1681b(b)(2)(A) requires that the consumer disclosure be] . . . in a document that consists solely of the disclosure."[4]  In response to an inquiry as to whether the disclosure may be prominently set forth within an application for employment or whether it must truly be included in a separate document, the FTC responded in another 1998 opinion letter that, "[t]he disclosure may not be part of an employment application because the language [of 15 U.S.C. § 1681b(b)(2)(A)] is intended to ensure that it appears conspicuously in a document not encumbered by any other information.  The reason for requiring that the disclosure be in a

---

[2] Section 1681a(d)(1)(B) of the FCRA defines "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for employment purposes."

[3] Section 1681a(e) of the FCRA defines "investigative consumer report" as "a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information."

[4] Coffey, FTC Informal Staff Opinion Letter, Feb. 11, 1998, available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-coffey-02-11-98 (last accessed Feb. 14, 2019).

CLASS ACTION COMPLAINT

stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure."[5]

27.     Further, in a report dated July 2011, the FTC reiterated that "the notice [under 15 U.S.C. § 1681b(b)(2)(A)] may not include extraneous or contradictory information."[6]

28.     The provisions excerpted above from the Authorization form constitute extraneous information, are unclear, and are not reasonably understandable to applicants.  For example, the provision referenced above regarding the scope of the Authorization form is a confusing compound sentence containing extraneous and contradictory information: "The scope of this notice and authorization is all-encompassing, however, allowing the Company, on its own behalf and on behalf of the Company's customers and clients, to obtain from any outside organization all manner of consumer reports and investigative consumer reports now and throughout the course of your employment with the Company or with the Company's customers and clients, as applicable, to the extent permitted by law."  Incredibly, the provision appears to allow Defendants to obtain a consumer report on an applicant for *any* arbitrary reason an unlimited number of times.

29.     Not only is the information presented in a manner that is confusing to a reasonable reader, but it is directly contravened by the requirement set forth in 15 U.S.C. § 1681b(a) that a consumer report be procured only for "permissible purposes," including employment purposes.  "Employment purposes" is defined in 15 U.S.C. § 1681a(h) as a consumer report used "for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee."  This cannot be the case if Defendants require consumers to sign off on an open-ended, perpetual authorization providing "evergreen consent."

---

[5] Leathers, FTC Informal Staff Opinion Letter, Sept. 9, 1998, available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98 (last accessed Feb. 14, 2019).

[6] Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations: July 2011, available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf (last accessed February 12, 2019).

This statement is also extraneous as to the issue of procurement of the initial background report. Further, this statement directly contradicts all of the language preceding it, wherein a specific consumer reporting agency is identified, and the scope and purpose of the report(s) are laid out in detail.

30.     Furthermore, the provisions referenced above regarding the applicant's rights under the laws of various states in addition to California, including Washington and New York, also constitute extraneous information serving only to confuse a reasonable reader.  Since Plaintiff resided in California at the time she filled out the Authorization form, and she did so in connection with applying for employment with Defendants in a California location, the state laws of Washington and New York are wholly irrelevant and extraneous, and the inclusion of these extraneous provisions causes the disclosure to fail to be "clear and conspicuous."  In addition, reference to state laws other than California's is confusing to a reasonable reader, particularly when buried within an 11-page printed document.

31.     Thus, by including extraneous and unclear provisions in its Authorization form, Defendants willfully disregarded the FTC's regulatory guidance and violated § 1681b(b)(2)(A) of the FCRA.

32.     Defendants' Authorization form also violates Cal. Civ. Code Sections 1785.20.5(a) and 1786.16(b) because it contains extraneous provisions, including an "evergreen consent" provision that in defiance of the requirement that Defendant provide Plaintiff and Class Members with written disclosures and obtain written authorization each time an investigative consumer report is sought; fails to identify a specific basis for requesting a consumer credit report under Cal. Labor Code Section 1024.5; and did not adequately inform Plaintiff and the Class that they may request a copy of a consumer credit report.

**CLASS ACTION ALLEGATIONS**

33.     Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(1), (b)(2), and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those

1    provisions.

2          34.    Plaintiff's first proposed Class, the "**FCRA Pre-Authorization Class**," consists

3    of and is defined as:

4

5              All persons residing in the United States who applied for an
               employment position with Defendants and executed the
6              Authorization Form within five years prior to the filing of this
               complaint until the date of trial.

7          35.    Plaintiff's second proposed Class, the "**FCRA Adverse Action Class**," consists

8    of and is defined as follows:

9              All persons residing in the United States who applied for an
               employment position with Defendants within five years prior to
10             the filing of this complaint, who executed the Authorization Form
               and who Defendants took adverse employment actions against
11             them based, in whole or in part, on information contained in a
               consumer report.
12

13         36.    Plaintiff's first proposed subclass, the "**ICRAA Subclass**," consists of and is

14   defined as follows:

15             All members of the FCRA Pre-Authorization Class who reside in
               California.
16

17         37.    Plaintiff's second proposed subclass, the "**CCRAA Subclass**," consists of and is

18   defined as follows:

19             All persons residing in California, who applied for an employment
               position with Defendants and executed the Authorization Form
20             within seven years prior to the filing of this complaint until the date
               of trial ("CCRAA Subclass").

21         38.    Plaintiff's proposed third proposed subclass, the "**UCL Subclass**," consists of

22   and is defined as follows:

23             All members of the FCRA Pre-Authorization Class and FCRA
               Adverse Action Class, who reside in California and applied for an
24             employment position with Defendants within four years prior to
               the filing of this complaint.
25

26         39.    Members of the Classes and Subclasses, as described above, will be referred to as

27   "Class Members."  Excluded from the Classes and Subclasses are:

28             (a)    Defendants, any entity or division in which Defendants have a controlling

CLASS ACTION COMPLAINT

interest, and their, and their legal representatives, officers, directors, assigns, and successors; and

(b)  the Judge to whom this case is assigned and the Judge's staff.

40.  Plaintiff reserves the right to amend the above Classes and Subclasses and to add additional subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

41.  <u>Numerosity</u>:  The Class Members are so numerous that joinder of all members would be unfeasible and impractical.  The membership of the entire Classes and Subclasses is unknown to Plaintiff at this time; however, the class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' employment and/or hiring records.  Consequently, it is reasonable to presume that the members of the Classes are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

42.  <u>Commonality</u>:  There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

(a)  Whether it is Defendants' standard procedure to provide a stand-alone written disclosure to applicants and employees before obtaining a consumer report, investigative consumer report, and/or credit report in compliance with the statutory mandates;

(b)  Whether it is Defendants' standard procedure to provide applicants and employees reasonable opportunity to obtain copies of their consumer report, investigative consumer report, and/or credit report in compliance with the statutory mandates;

(c)  Whether it is Defendants' standard procedure to provide applicants and employees with copies of their consumer report, investigative consumer report, and/or credit report in a timely matter in compliance with the

statutory mandates;

(d)    Whether it is Defendants' standard procedure to provide applicants and employees with a copy of the report, or summary of their rights under the FCRA, before taking adverse action based, in whole or in part, on information contained in a consumer report, investigative consumer report, and/or credit report;

(e)    Whether Defendants' failures to comply with the FCRA, ICRAA, or CCRAA were willful or grossly negligent;

(f)    Whether Defendants' conduct described herein constitutes a violation of the UCL; and

(g)    The appropriate amount of statutory damages, attorneys' fees, and costs resulting from Defendants' violations of federal and California law.

43.    <u>Typicality</u>:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom she is similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class Members' as demonstrated herein.

44.    <u>Adequacy</u>:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom she is similarly situated, as demonstrated herein. Plaintiff acknowledges that she has an obligation to make known to the Court any relationship, conflicts, or differences with any Class Member.  Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

45.    <u>Predominance</u>:  Questions of law or fact common to the Class Members predominate over any questions affecting only individual members of the Class.  The elements of the legal claims brought by Plaintiff and the Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

46.    <u>Superiority</u>:  Plaintiff and the Class Members have all suffered and will continue

to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur harm and damages and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

47.     The Class may also be certified because:

    (a)     the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

    (b)     the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    (c)     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

**FIRST CAUSE OF ACTION**

**Violation of the Fair Credit Reporting Act § 1681b(b)(2)(A)**

**(As to the FCRA Pre-Authorization Class Only)**

48.     Plaintiff hereby incorporates by reference the allegations contained in this

Complaint.

49.　　Defendants are a "person" as defined by § 1681a(b) of the FCRA.

50.　　Plaintiff and Class Members are consumers within the meaning § 1681a(c) of the FCRA, because they are "individuals."

51.　　Defendants violated § 1681b(b)(2)(A) of the FCRA by failing to provide Plaintiff and Class Members with a clear and conspicuous written disclosure, before a report is procured or caused to be procured, that a consumer report may be obtained for employment purposes, in a document that consists solely of the disclosure.

52.　　Based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Defendants have a policy and practice of failing to provide adequate written disclosure to applicants and employees before procuring consumer reports or causing consumer reports to be procured.  Pursuant to that policy and practice, Defendants procured consumer reports or caused consumer reports to be procured for Plaintiff and Class Members without first providing a written disclosure in compliance with § 1681b(b)(2)(A) of the FCRA.

53.　　Defendants' conduct in violation of § 1681b(b)(2)(A) of the FCRA was and is willful.  Defendants acted in deliberate or reckless disregard of their obligations and the rights of applicants and employees, including Plaintiff and Class Members.  Defendants' willful conduct is reflected by, among other things, the following facts:

(a)　　Defendants are large corporations with access to legal advice through their own general counsel's office and outside employment counsel.

(b)　　The Consumer Reporting Agency that provided Plaintiff's consumer report information to Defendants, First Advantage Background Services Corp., is an established background check provider with more than 30 years of experience and deems itself the "Global leader among background check companies."[7]

---

[7] First Advantage Homepage, subtitled: "Leading Global Background Check Company," https://fadv.com/ (last accessed March 13, 2019).

(c)   Defendants were clearly aware that the required disclosure must be set forth in a stand-alone document, as evidenced by the Authorization form provided to Plaintiff and based on the facts alleged herein.

(d)   The plain language of the statute unambiguously indicates that inclusion of extraneous or unclear information in a disclosure form violates the disclosure requirements.

54.   Accordingly, Defendants willfully violated and continues to violate the FCRA including, but not limited to, § 1681b(b)(2)(A).  Defendants' willful conduct is reflected by, among other things, the facts set forth above.

55.   As a result of Defendants' illegal procurement of consumer reports by way of its inadequate disclosures, as set forth above, Plaintiff and Class Members have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA.

56.   Plaintiff, on behalf of herself and the FCRA Pre-Authorization Class Members, seeks all available remedies pursuant to 15 U.S.C. § 1681n including statutory damages and/or actual damages, punitive damages, injunctive and equitable relief, and attorneys' fees and costs.

57.   In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

**SECOND CAUSE OF ACTION**

**Violation of the Fair Credit Reporting Act §§ 1681b(b)(3)(A) and 1681m(a)**

**(As to the FCRA Adverse Action Class Only)**

58.   Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

59.   Section 1681a(k)(1)(B)(ii) of the FCRA defines "adverse action" as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."

60.   Section 1681b(b)(3)(A) of the FCRA requires that before anyone attempts to take

any adverse action based in whole or in part on a consumer report, he or she must "provide to the consumer to whom the report relates a copy of the report; and a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection Bureau] under section 1681g(c) of this title," i.e., the FCRA Summary of Rights promulgated by the Federal Trade Commission and Consumer Financial Protection Bureau.  § 1681m(a) of the FCRA requires certain adverse action notices to be sent to individuals notifying them of an actual adverse decision.

61.     Based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Defendants have a policy and practice of taking adverse actions against applicants and employees based in whole or in part on the consumer report, without first providing them with a copy of the consumer report or current version of the FCRA Summary of Rights promulgated by the Federal Trade Commission and Consumer Financial Protection Bureau, and without sending final adverse action notices containing required elements.

62.     At all relevant times herein, Defendants, pursuant to the policy and practice described above, took adverse action against Class Members based in whole or in part on a consumer report, without:

      (a)     first providing a copy of the consumer report(s) used or

      (b)     a written description of the rights of the consumer, i.e., the FCRA Summary of Rights promulgated by the Federal Trade Commission and Consumer Financial Protection Bureau, and

      (c)     without sending final adverse action notices containing required elements.

63.     Defendants' conduct in violation of §§ 1681b(b)(3)(A) and 1681m(a) of the FCRA was and is willful.  Defendants acted in deliberate or reckless disregard of their obligations and the rights of applicants and employees.  Defendants' willful conduct is reflected by, among other things, the following facts:

      (a)     Defendants are large corporations with access to legal advice through their own general counsel's office and outside employment counsel.

    (b)    The Consumer Reporting Agency that provided Plaintiff's consumer report information to Defendants, First Advantage Background Services Corp., is an established background check provider with more than 30 years of experience and deems itself the "Global leader among background check companies."[8]

    (c)    Defendants were clearly aware of the adverse action requirement to provide a copy of the report and a written description of the rights of the consumer prior to taking an adverse action and to send final notice of an adverse action containing required elements, based on the facts alleged herein.

    (d)    The plain language of the statute unambiguously indicates that failure to provide the consumer with a copy of the report and a written description of the rights of the consumer violates pre-adverse action requirements.

64.    Accordingly, Defendants willfully violated and continued to violate the FCRA including, but not limited to §§ 1681b(b)(3)(A) and 1681m(a). Defendants' willful conduct is reflected by, among other things, the facts set forth above.

65.    Plaintiff, on behalf of the FCRA Adverse Action Class Members, seeks all available remedies pursuant to 15 U.S.C. § 1681n including statutory damages and/or actual damages, punitive damages, injunctive and equitable relief, and attorneys' fees and costs.

66.    In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

**THIRD CAUSE OF ACTION**

**Violation of the Investigative Consumer Reporting Agencies Act**

**Section 1786.16(a)(2)**

**(As to ICRAA Subclass Only)**

---

[8] First Advantage Homepage, subtitled: "Leading Global Background Check Company," https://fadv.com/ (last accessed March 13, 2019).

67.     Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

68.     Defendants are a "person" as defined by Cal. Civ. Code Section 1786.2(a).

69.     Plaintiff and Class Members are "consumers" within the meaning Cal. Civ. Code Section 1786.2(b), because they are natural individuals who have made application to a person for employment purposes.

70.     Section 1786.2(c) of the ICRAA defines "investigative consumer report" as "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means."

71.     Section 1786.2(d) of the ICRAA defines "investigative consumer reporting agency" as "any person who, for monetary fees or dues, engages in whole or in part in the practice of collecting, assembling, evaluating, compiling, reporting, transmitting, transferring, or communicating information concerning consumers for the purposes of furnishing investigative consumer reports to third parties, but does not include any governmental agency whose records are maintained primarily for traffic safety, law enforcement, or licensing purposes, or any licensed insurance agent, insurance broker, or solicitor, insurer, or life insurance agent."

72.     First, Section 1786.16(a)(2) provides, in relevant part:

> If, **at any time,** an investigative consumer report is sought for employment purposes other than suspicion of wrongdoing or misconduct . . ., the person seeking the investigative consumer report may procure the report, or cause the report to be made, only if all of the following apply:

> (A) The person procuring or causing the report to be made **has a permissible purpose**, as defined in Section 1786.12.

> (B) The person procuring or causing the report to be made provides a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure[].

> (C) The consumer has authorized in writing the procurement of the report.

73.     Defendants violated Section 1786.16(a)(2) of the ICRAA by failing to provide Plaintiff and Class Members with a clear and conspicuous disclosure in writing, which

1    adequately notified the consumer of the nature and scope of the investigation, and failing to

2    obtain written authorization each time an investigative consumer report is sought and procured

3    with a permissible purpose.

4          74.    On information and belief, and based upon the facts likely to have evidentiary

5    support after a reasonable opportunity for further investigation and discovery, Defendants had

6    and have a policy and practice of procuring investigative consumer reports or causing

7    investigative consumer reports to be procured for applicants and employees without providing

8    them with stand-alone disclosures and obtaining authorization every time, as required by law.

9          75.    Instead, the Authorization provided to Plaintiff states that "[t]he scope of this

10   notice and authorization is all-encompassing, however, allowing the Company, on its own

11   behalf and on behalf of the Company's customers and clients, to obtain from any outside

12   organization **all manner of consumer reports and investigative consumer reports now and**

13   **throughout the course of your employment** with the Company or with the Company's

14   customers and clients, as applicable, to the extent permitted by law." (emphasis added)

15         76.    Again, this provision appears to allow Defendants to obtain "all manner of"

16   consumer report on an applicant for *any* arbitrary reason an unlimited number of times.  Not

17   only is the information presented in a manner that is confusing to a reasonable reader, but it is

18   directly contravened by the requirement set forth in Section 1786.16(a)(2) that a consumer

19   report be procured only for "a permissible purpose," including employment purposes.

20   "Employment purposes" is defined in Section 1786.2(f) as a consumer report used "for the

21   purpose of evaluating a consumer for employment, promotion, reassignment, or retention as an

22   employee."  This cannot be the case if Defendants compel consumers to sign off on an open-

23   ended, perpetual authorization (or "evergreen consent"), in violation of Section 1786.16(a)(2)

24   (requiring that a written disclosure be provided "at any time" an investigative consumer report is

25   sought, subject to narrow exceptions), which allows Defendants to obtain a consumer report

26   without providing the requisite disclosure(s) or obtaining the necessary authorization.  Pursuant

27   to that policy and practice, Defendants procured investigative consumer reports or caused

28   investigative consumer reports to be procured for Plaintiff and Class Members without

providing them with the required disclosure or obtaining authorization under Section 1786.16(a)(2) of the ICRAA.

77.     Second, Section 1786.16(b)(1) provides, in relevant part, that any person described in subdivision (d) of Section 1786.12 who requests an investigative consumer report must provide a means by which the consumer may indicate on a written form, by means of a checkbox, that the consumer wishes to receive a copy of any report that is prepared.  If the consumer elects to receive a copy of the report, the recipient of the report must send a copy of the report to the consumer within three business days of the date that the report is provided to the recipient.

78.     Defendants violated Section 1786.16(b)(1) by failing to provide to Plaintiff and Class Members a written form, by means of a box to check, to indicate their desire to receive a copy of their investigative consumer report requested by Defendants.

79.     On information and belief, and based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Defendants had and have a policy and practice of procuring investigative consumer reports or causing investigative consumer reports to be procured for applicants and employees without:

(a)     providing them with clear and conspicuous stand-alone disclosures each time a report is requested,

(b)     obtaining authorization every time a report is requested, and

(c)     providing a mechanism for requesting copy of the report.

80.     Pursuant to Defendants' policy and practice, Defendants procured investigative consumer reports or caused investigative consumer reports to be procured for Plaintiff and Class Members without complying with the requirements set forth in Sections 1786.16(a)(2) and 1786.16(b)(1) of the ICRAA.

81.     Accordingly, Defendants willfully violated and continue to violate the ICRAA including, but not limited to Sections 1786.16(a)(2) and 1786.16(b)(1).  Defendants' willful or grossly negligent conduct is reflected by, among other things, the facts set forth above.

82.     As a result of Defendants' willful or grossly negligent failure to provide the

required form as set forth above, Plaintiff and Class Members have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the ICRAA, among other injuries.

83.    Plaintiff, on behalf of herself and the ICRAA Subclass Members, seeks all available remedies pursuant to Cal. Civ. Code Section 1786.50 including actual damages, punitive damages, injunctive and equitable relief, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### Violation of the Consumer Credit Reporting Agencies Act Section 1785.20.5(a)

### (As to CCRAA Subclass Only)

84.    Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

85.    Defendants are a "person" as defined by Cal. Civ. Code Section 1785.3(j).

86.    Plaintiff and Class Members are consumers within the meaning of Cal. Civ. Code Section 1785.3(b), because they are "natural individuals."

87.    Section 1785.3(c) of the CCRAA defines "consumer credit report" as any written, oral, or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for employment purposes.

88.    Section 1785.3(d) of the CCRAA defines "consumer credit reporting agency" as:

> "any person who, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties, but does not include any governmental agency whose records are maintained primarily for traffic safety, law enforcement, or licensing purposes."

89.    Section 1785.3(f) of the CCRAA defines "employment purposes," when used in connection with a consumer credit report, as "a report used for the purpose of evaluating a consumer for employment, promotion, reassignment, or retention as an employee."

Section 1785.20.5(a) of the CCRAA requires that prior to requesting a consumer credit report for employment purposes, the user of the report shall provide written notice that: (a) identifies the specific basis under Section 1024.5(a) of the Labor Code for use of the report; (b) informs the person of the source of the report; and (c) contains a box that the person may check off to receive a copy of the credit report.  The employer must provide the report to the applicant or employee contemporaneously and at no charge.

At all relevant times herein, Defendants wilfully violated Section 1785.20.5(a) of the CCRAA as to Plaintiff and Class Members, because they failed to provide written notice to Plaintiff and Class Members that references a specific basis for the report under Cal. Labor Code Section 1024.5 and failed include a check box that would allow Plaintiff and Class Members to opt to receive a copy of their consumer credit report.

90.     Pursuant to Labor Code section 1024.5, an employer or prospective employer shall not use a consumer credit report for employment purposes unless the employee or prospective employee is being considered for a specific position that requires additional vetting, such as a managerial position, a position in law enforcement, or a position with access to money or confidential or proprietary information.  Defendants requested a consumer credit report on Plaintiff and Class Members and failed to reference a permissible basis under section 1024.5 in the written disclosure.  The Authorization form merely states: "Credit history will only be requested where such information is substantially related to the duties and responsibilities of the position for which you are applying and in accordance with applicable state and federal law." Additionally, the Authorization form does not include a check box to allow Plaintiff and Class Members to opt to receive a copy of their consumer credit report.

91.     On information and belief and based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Defendants had and have a policy and practice of failing to:

    (a)     identify the specific basis under Labor Code section 1024.5(a) for use of the report, and

    (b)     provide notice including a check box that would allow applicants and

1    employees to choose to receive a copy of their consumer credit report.

2    92.    Pursuant to that policy and practice, Defendants wilfully violated Section

3    1785.20.5(a) of the CCRAA as to Plaintiff and Class Members.

4    93.    Accordingly, Defendants willfully violated and continue to violate the CCRAA

5    including, but not limited to, Section 1785.20.5(a) and have violated the privacy rights of

6    Plaintiff and Class Members.  Defendants' willful conduct is reflected by, among other things,

7    the facts set forth above.

8    94.    As a result of Defendants' willful conduct as set forth above, Plaintiff and Class

9    Members have been injured including, but not limited to, having their privacy and statutory

10    rights invaded in violation of the CCRAA, among other injuries.

11    95.    Plaintiff, on behalf of herself and the CCRAA Subclass Members, seeks all

12    available remedies pursuant to Cal. Civ. Code Sections 1785.31 including statutory damages

13    and/or actual damages, punitive damages, injunctive and equitable relief, and attorneys' fees and

14    costs.

15    96.    In the alternative to Plaintiff's allegation that these violations were willful,

16    Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any,

17    under Cal. Civ. Code Section 1785.31.

18    **FIFTH CAUSE OF ACTION**

19    **Violation of California Business & Professions Code Section 17200** *et seq.*

20    **(As to the UCL Subclass Only)**

21    97.    Plaintiff hereby incorporates by reference the allegations contained in this

22    Complaint.

23    98.    California's Unfair Competition Law ("UCL"), California Business &

24    Professions Code Section 17200 *et seq.,* protects both consumers and competitors by promoting

25    fair competition in commercial markets for goods and services.  The UCL prohibits any

26    unlawful, unfair, or fraudulent business act or practice.  A business practice need only meet one

27    of the three criteria to be considered unfair competition.  An unlawful business practice is

28    anything that can properly be called a business practice and that at the same time is forbidden by

1  law.

2      99.     As described above, Defendants have violated the "unlawful" prong of the UCL

3  in that Defendants' conduct violated numerous provisions of the FCRA, ICRAA, and CCRAA.

4      100.    Defendants have violated the "unfair" prong of the UCL in that they gained an

5  unfair business advantage by failing to comply with state and federal mandates in conducting

6  background checks and otherwise take the necessary steps to adhere to the FCRA, ICRAA, and

7  CCRAA.  Further, any utility for Defendants' conduct is outweighed by the gravity of the

8  consequences to Plaintiff and Class Members and because the conduct offends public policy.

9      101.    As a result of Defendants' conduct described herein and its willful violations of

10  California Business & Professions Code Section 17203, Plaintiff and the Class have lost money

11  and suffered harm as described herein.

12      102.    Pursuant to California Business & Professions Code Section 17203, Plaintiff

13  seeks an order enjoining Defendants from continuing to engage in the unfair and unlawful

14  conduct described herein.  Plaintiff seeks an order (a) requiring Defendants to cease the unfair

15  and unlawful practices described herein; and (b) awarding reasonable costs and attorneys' fees

16  pursuant to California Code of Civil Procedure Section 1021.5.

17                        **REQUEST FOR JURY TRIAL**

18      103.    Plaintiff requests a trial by jury of all issues which may be tried by a jury

19  pursuant to Rule 38 of the Federal Rules of Civil Procedure.

20                        **RELIEF REQUESTED**

21      Plaintiff, on behalf of herself and Class Members, requests that the Court enter judgment

22  against Defendants, as follows:

23      (a)     An order certifying the proposed Classes and Subclasses, designating

24              Plaintiff as named representative of the Classes and Subclasses, and

25              designating the undersigned as Class Counsel;

26      (b)     A Declaration that Defendants' practices violate the FCRA, ICRAA,

27              CCRAA, and UCL;

28      (c)     An award of statutory, compensatory, special, general, and punitive

1   damages according to proof against Defendants;

2       (d)    An award of appropriate equitable relief, including but not limited to an

3   injunction forbidding Defendants from engaging in further unlawful

4   conduct in violation of the FCRA, ICRAA, CCRAA, and UCL;

5       (e)    An award of pre-judgment and post-judgment interest, as provided by

6   law;

7       (f)    Leave to amend the Complaint to conform to the evidence produced at

8   trial;

9       (g)    An award of attorneys' fees and costs, as allowed by law, including an

10   award of attorneys' fees and costs pursuant to 15 U.S.C. § 1681n, 15

11   U.S.C. 1681o, California Civil Code, §§ 1786.50 and 1785.31(a), Code

12   of Civil Procedure § 1021.5; and

13       (h)    Such other relief as may be appropriate under the circumstances.

14

15   Dated:  March 19, 2019                    Respectfully submitted,

16                                            Capstone Law APC

17

18                                    By: /s/ Mark A. Ozzello

19                                       Mark A. Ozzello
                                          Tarek H. Zohdy
20                                       Cody R. Padgett
                                          Trisha K. Monesi

21                                       Attorneys for Plaintiff Kimberly Vaughn-Love

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# EXHIBIT 1

# Profile Advantage Consent

**DISCLOSURE**

**DISCLOSURE REGARDING BACKGROUND INVESTIGATION**

Eastridge Workforce Solutions ("the Company"), on its own behalf and on behalf of the Company's customers and clients, may obtain information about you from a third party consumer reporting agency in connection with your employment application and for employment purposes with the Company, or in connection with employment purposes with the Company's customers and clients on a direct hire basis. Thus, you may be the subject of a "consumer report" and/or an "investigative consumer report" which may include information about your character, general reputation, personal characteristics, and/or mode of living, and which can involve personal interviews with sources such as your neighbors, friends, or associates. These reports may contain information regarding your credit history, criminal history, social security verification, motor vehicle records ("driving records"), and verification of your education or employment history, employment references or other background checks. Credit history will only be requested where such information is substantially related to the duties and responsibilities of the position for which you are applying and in accordance with applicable state and federal law. You have the right, upon written request made within a reasonable time after receipt of this notice, to inspect and request disclosure of the nature and scope of any investigative consumer report and to receive a full and free copy of any report about you by contacting First Advantage Background Services Corp. ("First Advantage"), P.O. Box 105292, Atlanta, GA 30348,1-800-845-6004. Additionally, you have the right to request additional disclosures and information on the nature of the consumer report or investigative consumer report. Please be advised that the nature and scope of the most common form of investigative consumer report obtained with regard to applicants for employment is an investigation into your education and/or employment history conducted by First Advantage Background Services Corp. ("First Advantage"), P.O. Box 105292, Atlanta, GA 30348,1-800-845-6004. The scope of this notice and authorization is all-encompassing, however, allowing the Company, on its own behalf and on behalf of the Company's customers and clients, to obtain from any outside organization all manner of consumer reports and investigative consumer reports now and throughout the course of your employment with the Company or with the Company's customers and clients, as applicable, to the extent permitted by law. As a result, you should carefully consider whether to exercise your right to request disclosure of the nature and scope of any investigative consumer report.

**ACKNOWLEDGMENT AND AUTHORIZATION**

I acknowledge receipt of (a) the DISCLOSURE REGARDING BACKGROUND INVESTIGATION; (b) A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT; (c) A Summary of Your Rights Under the California Civil Code Section 1786.22 (if applicable); (d) A SUMMARY OF YOUR RIGHTS UNDER WASHINGTON STATE LAW (if applicable), and (e) Article 23-A of the New York Correction Law (if applicable) and certify that I have read and understand those documents. I hereby authorize the obtaining of and disclosure of "consumer reports" and/or "investigative consumer reports" by and to the Company or by and to the Company's customers and clients for direct hire purposes, if applicable, at any time after receipt of this authorization and throughout my employment with the Company or Company's customers and

clients, as applicable. To this end, I hereby authorize, without reservation, any law enforcement agency, administrator, state or federal agency, institution, school or university (public or private), information service bureau, employer, or insurance company to furnish any and all background information requested by First Advantage P.O. Box 105292 Atlanta, GA 30348, 1-800-845-6004, another outside organization acting on behalf of the Company, Company's customers and clients, and/or the Company itself. Their Privacy Policy can be reviewed at http://www.fadv.com/privacy-policy/. I also understand that information contained in my job application or otherwise disclosed by me before or during my employment with Company (or before or during my employment with Company's customers and clients on a direct hire basis), if any, may be used for the purpose of obtaining "consumer reports" and/or "investigative consumer reports. I agree that a facsimile ("fax"), electronic or photographic copy of this Acknowledgement and Authorization shall be as valid as the original.

## VOLUNTARY CONSENT FOR DISCLOSURE OF BACKGROUND CHECK REPORTS TO THIRD PARTIES FOR BUSINESS PURPOSES

Given the business nature of Eastridge Workforce Solutions (the "Company"), some third parties, such as the Company's customers and clients, require the Company to verify and/or disclose background check reports, including "consumer reports," "investigative consumer reports" and "consumer credit reports" solely for purposes of verifying eligibility for employment/assignment with the Company or with Company's customers and clients on a direct hire basis. The Company respects individual privacy. However, complying with such requirements is simply a reality of doing business in Company's industry. Accordingly, the Company is asking you to consent to the disclosure of your background check reports by the Company to third parties solely for purposes of verifying eligibility for employment/assignment with the Company or Company's customers and clients on a direct hire basis, as applicable, by signing where indicated. NOTE: If you decline to provide consent, the Company will not be able to staff you on certain accounts/assignments with the Company or provide you with employment opportunities with Company's customers and clients on a direct hire basis, but you will remain eligible for consideration for other accounts/assignments with the Company or employment opportunities with Company's customers and clients on a direct hire basis.

I voluntarily consent to the disclosure of background check reports about me by the Company to third parties, including Company's customers and clients for purposes of verifying eligibility for employment/assignment with the Company, or with Company's customers and clients on a direct hire basis, without further notice to me, and understand and agree that my consent is good throughout and after my term of employment/engagement with the Company or with Company's customers and clients on a direct hire basis, as applicable.

### A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. For more information, including information about additional rights, go to www.ftc.gov/credit or write to: Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

1. You must be told if information in your file has been used against you. Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment - or to take another adverse action against you - must tell you, and must give you the name, address, and phone number of the agency that provided the information

2. You have the right to know what is in your file. You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:

   1. a person has taken adverse action against you because of information in your credit report;
   2. you are the victim of identity theft and place a fraud alert in your file;
   3. your file contains inaccurate information as a result of fraud;
   4. you are on public assistance;
   5. you are unemployed but expect to apply for employment within 60 days.
   6. In addition, by September 2005 all consumers will be entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.ftc.gov/credit for additional information

3. You have the right to ask for a credit score. Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

4. You have the right to dispute incomplete or inaccurate information. If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.ftc.gov/credit for an explanation of dispute procedures.

5. Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information. Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

6. Consumer reporting agencies may not report outdated negative information. In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

7. Access to your file is limited. A consumer reporting agency may provide information about you only to people with a valid need -- usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

8. You must give your consent for reports to be provided to employers. A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.ftc.gov/credit.

9. You may limit "prescreened" offers of credit and insurance you get based on information in your credit report. Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-5-OPTOUT (1-888-567-8688).

10. You may seek damages from violators. If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

11. Identity theft victims and active duty military personnel have additional rights. For more information, visit www.ftc.gov/credit.

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. Federal enforcers are:**

| TYPES OF BUSINESS: | CONTACT: |
|---|---|
| Consumer reporting agencies, creditors and others not listed below | Federal Trade Commission: Consumer Response Center - FCRA Washington, DC 20580 Phone:1-877-382-4357 |
| National banks, federal branches/agencies of foreign banks (word "National" or initials "N.A." appear in or after bank's name) | Office of the Comptroller of the Currency Compliance Management Mail Stop 6-6, Washington, DC 20219 Phone: 800-613-6743 |
| Federal Reserve System member banks (except national banks, and federal branches/agencies of foreign banks) | Federal Reserve Consumer Help, PO Box 1200, Minneapolis, MN 55480 Phone:888-851-1920 Web: federalreserveconsumerhelp.gov Email: ConsumerHelp@FederalReserve.gov |
| Savings associations & federally chartered savings banks (word "Federal" or initials "F.S.B." appear in federal institution's name) | Office of Thrift Supervision Consumer Complaints Washington, DC 20552 Phone:800-842-6929 |
| Federal credit unions (words "Federal Credit Union" appear in institution's name) | National Credit Union Administration 1775 Duke Street, Alexandria, VA 22314 Phone 703-519-4600 |
| State-chartered banks that are not members of the Federal Reserve System | Federal Deposit Insurance Corporation Consumer Response Center 2345 Grand Avenue, Suite 100 Kansas City, Missouri 64108-2638 Phone: 1-877-275-3342 |
| Air, surface, or rail common carriers regulated by former Civil Aeronautics Board or Interstate Commerce Commission | Department of Transportation , Office of Financial Management Washington, DC 20590 Phone: 202-366-1306 |

| Activities subject to the Packers and Stockyards Act, 1921 | Department of Agriculture Office of Deputy Administrator ï¿½ GIPSA Washington, DC 20250 Phone: 202-720-7051 |

Para informacion en espanol, visite www.ftc.gov/credit o escribe a la FTC Consumer Response Center, Room 130-A 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

**California - A Summary of Your Rights Under California Law**

Under California law, you are entitled, upon presentation of proper identification (*), to find out from an investigative "consumer reporting agency" ("CRA") what is in your file, as follows:

1. In person, by visual inspection of your file during normal business hours and on reasonable notice;
2. By obtaining a summary of it via telephone call, if you have made a written request, with proper identification, for telephone disclosure and the toll charge, if any, for the telephone call is prepaid by you or charged directly to you; or
3. By requesting in writing, with proper identification, that a copy of it be sent to a specified addressee by certified mail.

Investigative CRAs complying with requests for certified mailings shall not be liable for disclosures to third parties caused by mishandling of mail after such mailings leave the investigative CRAs. You also may request a copy of the information in person. The CRA may not charge you more than the actual copying costs for providing you with a copy of your file. The investigative CRA will provide trained personnel to explain any information furnished to you and will provide a written explanation of any coded information contained in files maintained on you. This written explanation will be provided whenever a file is provided to you for visual inspection. You may be accompanied by one other person of your choosing, who must furnish reasonable identification. An investigative CRA may require you to furnish a written statement granting permission to the CRA to discuss your file in such person's presence.

(*) The term "proper identification" as used above shall mean that information generally deemed sufficient to identify a person. Such information includes documents such as a valid driver's license, social security account number, military identification card, and credit cards. Only if the consumer is unable to reasonably identify himself with the information described herein, may an investigative CRA require additional information concerning your employment and personal or family history in order to verify your identity.

| FOR QUESTIONS OR CONCERNS REGARDING | PLEASE CONTACT |
| --- | --- |
| CRAs and creditors | California Attorney General's Office Public Inquiry Unit P.O. Box 944255 Sacramento, CA 94244-2550 800-952-5225 |

| CRAs and creditors | California Department of Consumer Affairs 400 R Street, Suite 1080 Sacramento, CA 95814 800-952-5210 |
|---|---|

**California - Notice Regarding Credit Checks:**

Pursuant to Section 1024.5 of the California Labor Code, the Company may obtain a credit report about you from the above named entity if you are seeking to work in any of the following positions:

1. A position covered by the executive exemption set forth in subparagraph (1) of paragraph (A) of Section 1 of Wage Order 4 of the Industrial Welfare Commission;
2. A position in the state Department of Justice;
3. A sworn peace officer or other law enforcement;
4. A position for which the information contained in the report is required by law to be disclosed or obtained;
5. A position that involves regular access to specified personal information for any purpose other than the routine solicitation and processing of credit card applications in a retail establishment, such as bank or credit card account information, social security number, or date of birth;
6. A position which the person can enter into financial transactions on behalf of the company;
7. A position that involves access to confidential or proprietary information; or
8. A position that involves regular access to $10,000 or more of cash.

**Vermont - Notice Regarding Credit Checks:**

Pursuant to Vermont Act No. 154 (S. 95), the Company informs you that it may obtain a credit report about you, for any of the following reason(s):

1. The information is required by state or federal law or regulation;
2. You seek to be/are employed in a position that involves access to "confidential financial information" (defined as "sensitive financial information of commercial value that a customer or client of the employer gives explicit authorization for the employer to obtain, process, and store and that the employer entrusts only to managers or employees as a necessary function of their job duties");
3. The Company is a financial institution as defined in 8 V.S.A. §11101(32) or a credit union as defined in 8 V.S.A. §30101(5);
4. You seek to be/are employed in a position as a law enforcement officer, emergency medical personnel or firefighter as these terms are respectively defines in 20 V.S.A. §2358, 24 V.S.A. §2651(6) and 20 V.S.A. §3151(3);
5. You seek to be/are employed in a position that requires a financial fiduciary responsibility to the Company or a Company's clients, including the authority to issue payments, collect debts, transfer money or enter into contracts;
6. You seek to be/are employed in a position that involves access to the Company's payroll information; or
7. The Company can demonstrate that credit information is a valid and reliable predictor of employee performance in the your specific position of employment.

**State of Washington - Consumer Credit Reporting Act Summary Of Consumer Rights**

The State of Washington Fair Credit Reporting Act (WFCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records).

Here is a summary of your major rights under the WFCRA. The WFCRA is modeled after the Federal Fair Credit Reporting Act. The same rights are provided under the Federal Fair Credit Reporting Act and you have received A Summary of Your Rights Under the Federal Fair Credit Reporting Act. You can get the complete text of WFCRA RCW 19.182, from the Washington Code Revisers Office, P.O. Box 40551, Olympia, WA, 98504, or online at http://apps.leg.wa.gov/rcw/default.aspx?cite=19.182&full=true#19.182.070.

You must be told if information in your file has been used against you. If a person takes an adverse action against you that is based, in whole or in part, on information contained in a consumer report, that person must tell you, and must give you the name, address, and telephone number of the consumer reporting agency that provided the information.

You have a right to know what is in your file. You may request and obtain all the information about you in the files of a consumer reporting agency, although medical information may be withheld and given directly to your medical provider. You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You will not be charged for:

- a consumer report if a person has taken adverse action against you because of information in your credit report;
- the reinvestigation of information you dispute; or
- Corrected reports resulting from the deletion of inaccurate or unverifiable information.

In addition, you are entitled to one free consumer report every 12 months, upon request. You may be charged a limited fee for a second or subsequent report requested by you during a 12 month period.

You have a right to dispute incomplete or inaccurate information. If you identify information in your file that is incomplete or inaccurate, and you notify the consumer reporting agency directly of the dispute, the consumer reporting agency will reinvestigate without charge and record the current status of the disputed information before the end of thirty business days, unless your dispute is frivolous.

Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information. Upon completion of the reinvestigation, if the information you disputed is found to be inaccurate or cannot be verified, the consumer reporting agency will delete the information and notify you of the correction. If the reinvestigation does not resolve your dispute, you may file with the consumer reporting agency a brief statement setting forth the nature of your dispute. The statement will be placed in your consumer file and in any subsequent report containing the information you disputed.

Consumer reporting agencies may not report outdated negative information. In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than ten years old.

Access to your file is limited. A consumer reporting agency may provide information about you only to people with a valid need ï¿½ usually to consider an application with a creditor, insurer, employer, landlord, or other business. The WFCRA specifies those with a valid need for access.

You must be notified if reports are provided to employers. A consumer reporting agency may not give out information about you to employers without your knowledge. A potential employer must make a clear and conspicuous disclosure in writing to you or obtain your consent before obtaining a report. A current employer may not receive a report unless it has given you written notice that consumer reports may be used for employment purposes.

You may limit "prescreened" offers of credit and insurance you get based on information in your credit report. You may elect not to receive unsolicited "prescreened" offers for credit and insurance by using the consumer reporting agency's notification system to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-5-OPTOUT (1-888-567-8688).

You may place a security freeze on your credit report. A security freeze prevents your credit file from being shared with potential creditors or insurance companies. You may request a security freeze by contacting us by phone at 1-800-831-2578, online by visiting https://personalreports.lexisnexis.com/contacts.jsp mail, or by mail by writing to the LexisNexis Consumer Center; ATTN: Security Freeze; P.O. Box 105108; Atlanta, Georgia 30348-5108. We may charge a fee for providing this service.

You may be able to block information resulting from identity theft from appearing on your credit report. If you are a victim of identity theft, a consumer reporting agency must permanently block misinformation resulting from that theft from appearing on your credit report. You must provide the consumer reporting agency with a copy of a police report as evidence of your claim before it can place the block on your report.

You may seek damages from violators. If a consumer reporting agency, or in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the WFCRA, you may be able to sue in state or federal court.

**COMPLAINTS**
Any complaints by consumers under state law may be directed to:
    Office of the Attorney General
    Consumer Protection Division
    800 5th Avenue, Suite 2000
    Seattle, Washington 98104-3188
Phone 1-800-551-4636 or (206) 464-6684
Fax (206) 389-2801
Statewide Toll-Free TDD: 800 276-9883
Complaints May Be Made Via U.S. Mail or E-Mail Complaints:

http://www.atg.wa.gov/FileAComplaint.aspx
(Include your U.S. Mail address with any complaint.)
Website & Forms: http://www.atg.wa.gov/

**New York Correction Law Article 23-A - Licensure and Employment of Persons Previously Convicted of One or More Criminal Offenses**

**Section 750. Definitions.**
**751. Applicability.**
**752. Unfair discrimination against persons previously convicted of one or more criminal offenses prohibited.**
**753. Factors to be considered concerning a previous criminal conviction; presumption.**
**754. Written statement upon denial of license or employment.**
**755. Enforcement.**

**§ 750. Definitions.** For the purposes of this article, the following terms shall have the following meanings:

1. "Public agency" means the state or any local subdivision thereof, or any state or local department, agency, board or commission.
2. "Private employer" means any person, company, corporation, labor organization or association which employs ten or more persons.
3. "Direct relationship" means that the nature of criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the license, opportunity, or job in question.
4. "License" means any certificate, license, permit or grant of permission required by the laws of this state, its political subdivisions or instrumentalities as a condition for the lawful practice of any occupation, employment, trade, vocation, business, or profession. Provided, however, that "license" shall not, for the purposes of this article, include any license or permit to own, possess, carry, or fire any explosive, pistol, handgun, rifle, shotgun, or other firearm.
5. "Employment" means any occupation, vocation or employment, or any form of vocational or educational training. Provided, however, that "employment" shall not, for the purposes of this article, include membership in any law enforcement agency.

**§751. Applicability.** The provisions of this article shall apply to any application by any person for a license or employment at any public or private employer, who has previously been convicted of one or more criminal offenses in this state or in any other jurisdiction, and to any license or employment held by any person whose conviction of one or more criminal offenses in this state or in any other jurisdiction preceded such employment or granting of a license, except where a mandatory forfeiture, disability or bar to employment is imposed by law, and has not been removed by an executive pardon, certificate of relief from disabilities or certificate of good conduct. Nothing in this article shall be construed to affect any right an employer may have with respect to an intentional misrepresentation in connection with an application for employment made by a prospective employee or previously made by a current employee.

**§ 752. Unfair discrimination against persons previously convicted of one or more criminal offenses prohibited.** No application for any license or employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied

or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses, or by reason of a finding of lack of "good moral character" when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless:

1. There is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or
2. The issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

**§ 753.Factors to be considered concerning a previous criminal conviction; presumption.**

1. In making a determination pursuant to section seven hundred fifty-two of this chapter, the public agency or private employer shall consider the following factors:
    1. The public policy of this state, as expressed in this act, to
    2. Encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
    3. The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
    4. The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
    5. The time which has elapsed since the occurrence of the criminal offense or offenses.
    6. The age of the person at the time of occurrence of the criminal offense or offenses.
    7. The seriousness of the offense or offenses.
    8. Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.
    9. The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.
2. In making a determination pursuant to section seven hundred fifty-two of this chapter, the public agency or private employer shall also give consideration to a certificate of relief from disabilities or a certificate of good conduct issued to the applicant, which certificate shall create a presumption of rehabilitation in regard to the offense or offenses specified therein.

**§ 754. Written statement upon denial of license or employment.** At the request of any person previously convicted of one or more criminal offenses who has been denied a license or employment, a public agency or private employer shall provide, within thirty days of a request, a written statement setting forth the reasons for such denial.

**§ 755.Enforcement.**

1. In relation to actions by public agencies, the provisions of this article shall be enforceable by a proceeding brought pursuant to article seventy-eight of the civil practice law and rules.
2. In relation to actions by private employers, the provisions of this article shall be enforceable by the division of human rights pursuant to the powers and procedures set forth in article fifteen of the executive law, and, concurrently, by the New York city commission on human rights.

**Consent And Authorization**

I have read and accept the terms of this online profile. **I Agree**

First Name (given name) :                    Kimberly
Last Name (family name) :                    Love

**Signature**

Date : Wed Aug 01 00:21:53 GMT 2018